Allen J.
delivered the opinion of the court.
James Stone and Serlie his wife presented a petition to a judge of the Circuit court, alleging that a female infant child, the daughter of the female petitioner by *103 a former husband, was illegally retained in the possession and custody of the appellant, John J. P. Armstrong, the paternal grandfather of the child, prayed that a writ of habeas corpus ad subjiciendum, might be awarded them. The petition was verified by affidavit, and the judge, by his order referring to the petition, awarded to the infant the writ, which issued in the usual form, and was made returnable before the Circuit court of Jackson county at a special term. On the return day the cause was docketed and continued, and on a subsequent day the appellant appeared and moved to quash the writ, the order awarding it, and the petition of the relators. This motion the court overruled, being of opinion that it was not competent to make such motion until a return was made to the writ, and that after the return it would be competent to make any defence of which he might avail himself on a motion to quash. The appellant thereupon made a return and produced the infant; and the evidence on both sides being heard, the court directed the child to be restored to the custody of its mother, the female petitioner. From this decision the defendant below has appealed.
The first error assigned is the refusal of the court below to quash the proceedings, because it is alleged the petition should have been made by the infant by her next friend.
This objection is based upon the provisions of the Code, p. 613, which it is argued varies from the act contained in 1 Rev. Code 468, § 1, which enacted that whenever any person detained in custody, whether charged with a criminal offence or not, shall, by himself or by some other person in his behalf, apply, &c., and show by affidavit or other evidence, probable cause to believe that he is detained in custody without lawful authority, &c. The Code provides that the writ shall be granted to any person who shall apply for the same *104 by petition, showing by affidavit or other evidence, probable canse to believe he is detained without lawful authority; omitting the words by himself or some other person in his behalf, found in the act of 1819.
We think there is no substantial difference between the two enactments. Both acts depart, in many particulars, from the act of 31 Charles 2, which was limited to cases of detainer for criminal or supposed criminal matter, all other cases of unjust imprisonment being left to the habeas corpus at common law ,* whereas our act extends to all cases where a person is detained without lawful authority. 2 Tuck. Com., book 2, chap. 68. In all such cases, therefore, the provisions of the statute come in place of the common law; and as it was the leading intent of all the statutory provisions on this subject to extend and simplify this great and efficacious remedy for all illegal confinement, the words of the statute should be liberally construed so as to carry out that intent. Whether the application or petition be preferred by the party himself, or in his name or by another in his behalf, probable cause to believe he is detained by unlawful authority must be shown by affidavit or other evidence. When this is shown the writ is awarded to him, and the application would be treated as made by him unless disavowed. Where the person alleged to be detained illegally labors under disabilities, it would seem to be more appropriate to issue the writ on the petition of the person asserting the claim to the custody, than upon the petition of the person detained by his next friend. In either mode there is a person liable for the costs, and from whom the bond provided for in the 3d section may be required. The party contesting the claim sustains no injury, is deprived of no benefit, whether the one mode or the other be adopted, and should not be permitted to defeat the writ by mere personal objections.
*105 It is objected that the petition is in the name of the husband and wife, and that although the mother might be entitled to the custody of the child, the right personal, and does not devolve on the second husband; and therefore he improperly joined in the petition. It may be conceded that there is no devolution of authority to the husband; but until it is also shown that a second marriage forfeits the right of the mother, there is nothing in the objection; for she could not institute any pi’oeeeding to assert the right unless her husband united. The enactment in the Code 533, § 7th, does not apply to this case. There may be a guardian during the lifetime of the father or mother, or both of them. That section, as a general rule, gives the custody of the ward and the care and management of his estate to the guardian, but provides that the father, if living, and if dead, the mother, while she remains unmarried, shall, if fit for the trust, have the custody of the person of the minor and care of his education. This is not a controversy between the mother and a regularly appointed guardian for the custody of the minor, in which case only would the statute apply.
It is further argued that it is not the function of a writ of habeas corpus to try rights of property or settle questions of guardianship, but simply to release from improper confinement; and if it appear there is no improper restraint upon the minor, the court should not interfere.
It is true that a contest for the guardianship could not properly be determined upon a writ of habeas corpus. The law has prescribed another form for settling such controversies. In England the chancellor, representing the king as parens patria, has jurisdiction to determine controversies concerning the guardianship of a minor, and may control the right of a father to the custody of his child. De Manneville v. De Mannemlle, 10 Ves. R. 52. But the courts of law and the *106 judges thereof possess no such authority. Ex parte Skinner, 17 Eng. C. L. R. 122. In that case Ch'. J.' said, that no authority had been cited to show. p[ie court liad, jurisdiction to take a child out of ^le cusfody of the father and deliver it over to the mother. Being in the legal custody of the father, if he abused his parental authority, the chancellor might interfere. The same proposition is advanced in The People v. Chegary, 18 Wend. R. 637. In the case of De Lacy v. Antoine, 7 Leigh 438, this court declared,», that if, on the return, there was probable- cause to believe that the petitioner was detained as a slave, the right to freedom should not be determined on a habeas corpus.
Whilst, therefore, it is undoubtedly true that the proper office of. the writ is to release from illegal restraint, and where the party is of years of discretion. and sui juris, nothing more is done than to discharge him; yet, if he be not of an age to determine for him-: self, the court or judge must decide for him, and make an order for his being placed in the proper custody; And to enable it to do so, must determine to whom the right to the custody belongs. The custody of the minor will be assigned to the person having the right,unless it appeared he was an improper person to take it. There being no legal guardian whose rights aré involved in the present controversy, and the father being dead, the mother, by reason of nurture, is' entitled to the custody as of right, 4 Comyn’s Dig. title Guardian, D ; Ratcliff’s Case, 3 Cope 37. Mellish v. De Costa, 2 Atk. R. 14. And as she seeks by this writ .to. have the child placed in her custody, the case is one in which the court can use its discretion whether, under all the circumstances, it is best for the infant to assign it to the custody of the mother. The jurisdiction of the court or judge to determine who has the right to the custody of the minor upon a habeas corpus, *107 has been uniformly affirmed. King v. Delaval, 3 Burr. R. 1434; King v. Greenhill, 31 Eng. C. L. R. 153. Where the person entitled has the custody and it, the power of the court is limited, and the remedy for the abuse must be administered in another form. But where he has not the custody, and is seeking to be restored to it, the court will exercise its discretion according to the facts, consulting the wishes of the minor, if of years of discretion; if not, exercising its own judgment as to what will be best calculated to promote the interests of the child, having due regard to the legal rights of the party claiming the custody.
In the present case, the mother was entitled to the custody as her legal right: the right was not lost by her intermarriage, there being no legal guardian to the child; and the facts and circumstances disclose nothing which should induce the court, in the exercise of a sound discretion, to deprive her of the custody. The defendant and wife are proved to be persons of exemplary character, warmly attached to their grandchild, who has been treated by them with great kindness and affection. But they are in the decline of life, in doubtful circumstances as to solvency, and somewhat dependent on their own children for a home. The mother and her second husband are shown to be persons of excellent moral character. They have,been married two years and have no children; and the husband is an industrious young man, whose father is in good circumstances. The mother, after the death of her first husband, who left no estate, supported herself by teaching school and her own labor; and during that period the child was left in the care of the defendant. The child is in her seventh year, too young to judge for herself upon such a state of facts. The judge, in the exercise of a sound discretion, could not hesitate in saying, in the language of the chancellor in Mellish v. De Costa, 2 Atk. R. 14, that the child had a *108 natural right to the care and nurture of her mother. The conduct of the mother in permitting the child to with the defendant whilst she herself was for her own support, does not impair her right ^ie custody- Owing to the change in her condition, the interest of the child will probably be promoted by the custody being restored to her.
Judgment affirmed.